## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### CASE NO. 23-12616-D

---

RICHARD BURT,

*Plaintiff-Appellant*,

v.

W. KENT FUCHS, in his official capacity as President of the
University of Florida, DAVID E. RICHARDSON, individually,
MARY WATT, individually, and SIDNEY DOBRIN, individually,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Florida
Case No. 1:22-cv-00075-MW-HTC

---

### APPELLEES' ANSWER BRIEF

---

ALEXANDER DEGANCE BARNETT, PA
Michelle Bedoya Barnett (Lead Counsel)
Fla. Bar No. 0823201
E-mail: michelle.barnett@adblegal.com
Samantha Guidici Berdecia
Fla. Bar No. 0058667
E-mail: samantha.guidici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Ave.
Jacksonville, Florida 32204
Tel.: (904) 345-3277; Fax: (904) 345-3294
*Counsel for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Defendants-Appellees, W. Kent Fuchs, in his official capacity as President of the University of Florida, David E. Richardson, Mary Watt, and Sidney Dobrin, by and through undersigned counsel and pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure ("FRAP") and Eleventh Circuit Rule 26.1-1, hereby certify that the following persons and entities have an interest in the outcome of this case:

1.    Alexander DeGance Barnett, P.A. – Counsel for Defendants-Appellees

2.    Barnett, Michelle Bedoya – Lead Counsel for Defendants-Appellees.

3.    Berdecia, Samantha Giudici – Counsel for Defendants-Appellees

4.    Burt, Richard – Plaintiff-Appellee

5.    Cannon, Honorable Hope T. – Magistrate Judge, U.S. District Court for the Northern District of Florida

6.    Dobrin, Sidney – Defendant-Appellee

7.    Florida Department of Financial Services, Division of Risk Management

8.    Fuchs, W. Kent, in his official capacity as President of the University of Florida – Appellee-Defendant

9.    Johnson, Richard E. – Lead Counsel for Plaintiff-Appellee

10.    Law Office of Richard E. Johnson, P.A. – Counsel for Plaintiff-Appellee

11.    Richardson, David E. – Defendant-Appellee

4864-2663-1864, v. 1

12.    University of Florida

13.    University of Florida Board of Trustees

14.    Walker, Honorable Mark E. – Chief Judge, U.S. District Court for the
       Northern District of Florida

15.    Watt, Mary – Defendant-Appellee


The undersigned certifies that no publicly traded company or publicly traded corporation has an interest in the outcome of this case or this appeal.

4864-2663-1864, v. 1

## PRELIMINARY STATEMENT

The following references are used in this brief:

Plaintiff-Appellant Richard Burt is referred to as "Burt."

W. Kent Fuchs, in his official capacity as President of the University of Florida is referred to as "President Fuchs"

David E. Richardson, Mary Watt, and Sidney Dobrin are referred to collectively as the "Individual Defendants"

The University of Florida is referred to as the "University" or "UF"

(Initial Brief at #) refers to Initial Brief of Appellant [# = Page No.]

(App. at #) refers to the Appellant's Appendix

(Doc. __ at #) refers to the docket number of the document in the District Court.

4864-2663-1864, v. 1

## STATEMENT REGARDING ORAL ARGUMENT

The University respectfully submits that oral argument in this case is unnecessary because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. 11th Cir. R. 28-1(c), 34-3(b). Given that this appeal arises out of the district court's final order and judgment dismissing Plaintiff-Appellant, Richard Burt's free speech and procedural due process claims under the First and Fourteenth Amendments at the initial pleading stage, this case does not involve a complex procedural history or extensive factual record. The issues to be decided in this appeal were extensively briefed by the Parties during the underlying proceedings before the district court. Upon completion of the briefing process before this Court, it is respectfully submitted that the nature of this case represents one of the rare exceptions to the general rule where oral argument would not significantly aid the Court's disposition of the issues to be decided. Therefore, the University believes that this appeal may be appropriately decided based on the briefs and record alone.

4864-2663-1864, v. 1

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement......................i

Preliminary Statement................................................................................. iii

Statement Regarding Oral Argument.........................................................iv

Table of Contents .........................................................................................v

Table of Authorities.................................................................................. vii

Jurisdictional Statement .......................................................................... xii

Statement of the Issues..............................................................................1

Statement of the Case...............................................................................2

Summary of the Argument........................................................................5

Argument...................................................................................................8

    I.    Burt is precluded from presenting new legal theories for the
first time on appeal .............................................................8

    II.   The District Court properly applied *Garcetti* to the facts of this
case ...................................................................................12

        A.   Burt's argument that *Garcetti* does not apply to public
universities is unsupported.........................................12

        B.   Because Burt's speech was not related to scholarship or
teaching, the District Court properly applied *Garcetti* .............16

        C.   The District Court correctly held that Burt was speaking
as a public employee and not a citizen ....................20

    III.  The District Court properly found that the Individual Defendants
are entitled to qualified immunity......................................25

A.    The properly determined that neither case law not federal constitutional values clearly establish that Burt's emails were protected speech ................................................................26

B.    Burt's argument that the Individual Defendant's conduct was "so obviously unconstitutional that its unlawfulness was readily apparent" lacks merit .............................................28

IV.    This District Court properly found that the University did not violate Burt's right to procedural due process....................................29

Conclusion ................................................................................................31

Certificate of Compliance .........................................................................32

Certificate of Service ...............................................................................33

4864-2663-1864, v. 1

# TABLE OF AUTHORITIES

## Cases

*Access Now, Inc. v. Sw. Airlines Co.,*
    385 F.3d 1324 (11th Cir. 2004)......................................................8, 10, 11, 12

*Adams v. Trustees of the Univ. of N.C.-Wilmington,*
    640 F.3d 550 (4th Cir. 2011).....................................................................17, 20

*Alves v. Bd. of Regents of the Univ. Sys. of Georgia,*
    804 F.3d 1149 (11th Cir. 2015)............................................................20, 21, 23

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    953 F.3d 707 (11th Cir. 2020)........................................................................ xii

*Boyce v. Andrew,*
    510 F.3d 1333 (11th Cir. 2007)............................................................21, 26, 27

*Brown v. Armenti,*
    247 F.3d 69 (3d Cir. 2001)..............................................................................17

*Brown v. City of Huntsville,*
    608 F.3d 724 (11th Cir. 2010)........................................................................25

*Carollo v. Boria,*
    833 F. 3d 1322 (11th Cir. 2016).....................................................................27

*Carruth v. Bentley,*
    942 F. 3d 1047 (11th Cir. 2019).....................................................................29

*Carter v. DeKalb Cnty., Ga.,*
    521 F. App'x 725 (11th Cir. 2013)..................................................................26

*Coffin v. Brandau,*
    642 F.3d 999 (11th Cir. 2011)........................................................................28

*Cotton v. Jackson,*
    216 F.3d 1328 (11th Cir. 2000)......................................................................29

*Crosby v. Monroe Cnty.,*
    394 F.3d 1328 (11th Cir. 2004)......................................................26

*Davis v. Advocate Health Ctr. Patient Care Exp.,*
    523 F.3d 681 (7th Cir. 2008)...................................................... xiii

*Dean Witter Reynolds, Inc. v. Fernandez,*
    741 F.2d 355 (11th Cir. 1984)......................................................10

*Depree v. Thomas,*
    946 F.2d 784 (11th Cir. 1991)........................................................8

*Edwards v. California University of Pennsylvania,*
    156 F.3d 488 (3d Cir. 1998)....................................................17, 18

*Faucher v. Rodziewicz,*
    891 F.2d 864 (11th Cir. 1990)...................................................30, 31

*Fernandez v. Freedom Health, Inc.,*
    No. 22-13823, 2023 WL 4196950 (11th Cir. Jun. 27, 2023)................ xii, xiii

*\*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)........................................8, 9, 12, 13, 16, 21

*Green v. Drug Enf't Admin.,*
    606 F.3d 1296 (11th Cir. 2010)................................................... xii

*Grutter v. Bollinger,*
    539 U.S. 306 (2003).................................................................15

*Hamer v. Neighborhood Hous. Servs. of Chi.,*
    138 S. Ct. 13 (2017)............................................................... xii

*Hertz Corp. v. Alamo Rent-A-Car, Inc.,*
    16 F.3d 1126 (11th Cir. 1994).................................................... xii

*Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004)....................................................25

4864-2663-1864, v. 1

*Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.,*
  202 F.3d 1297 (11th Cir. 2000).......................................................................29

*Hoyt v. Cooks,* 672 F.3d 972 (11th Cir. 2012)...................................................25, 26

*J W by and through Tammy Williams v. Birmingham Bd. of Educ.,*
  904 F.3d 1248 (11th Cir. 2018).......................................................................28

*Johnson-Kurek v. Abu-Absi,*
  423 F.3d 590 (6th Cir. 2005).........................................................................18

*Keller v. City of Tallahassee,*
  181 F. Supp. 3d 934 (N.D. Fla. 2015) ...........................................................21

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.,*
  385 U.S. 589 (1967).........................................................................14,

*Lawson v. City of Miami Beach,*
  908 F. Supp. 2d 1285 (S.D. Fla. 2012) ...........................................................25

*Maples v. Martin,*
  858 F. 2d 1546 (11th Cir. 1988)....................................................................25

*Martin v. Chancellor for Bd. of Regents of Univ. Sys. of Georgia,*
  No. 22-12827, 2023 WL 4131443 (11th Cir. June 22, 2023)........................26

*\*McKinney v. Pate,*
  20 F. 3d 1550 (11th Cir. 1994).......................................................................29

*Meriwether v. Hartop,*
  992 F.3d 492 (6th Cir. 2021)................................................................13, 14, 19

*Moss v. City of Pembroke Pines,*
  782 F.3d 613 (11th Cir. 2015).......................................................................21

*Narey v. Dean,*
  32 F.3d 1521 (11th Cir. 1994).......................................................................10

*Pickering v. Bd. of Educ. Of Township High Sch. Dist. 205, Will Cty.,*
  391 U.S. 563 (1968) ..................................................................................9, 13

4864-2663-1864, v. 1

*Pierre v. United States,*
    No 23-10241, 2023 WL 8720019 (11th Cir. Dec. 18, 2023)........................ xii

*Porter v. Bd. of Trustees of N. Carolina State Univ.,*
    72 F.4th 573 (4th Cir. 2023)..............................................................16

*Regents of Univ. of Cal. v. Bakke,*
    438 U.S. 265 (1978)........................................................................16

*Sadid v. Vailas,*
    936 F. Supp. 2d 1207 (D. Idaho 2013) ............................................16

*Schuurman v. Motor Vessel Betty K V,*
    798 F.2d 442, 445 (11th Cir. 1986)............................................... xiii

*Shelton v. Tucker,*
    364 U.S. 479 (1960)........................................................................15

*Sweezy v. New Hampshire,*
    354 U.S. 234 (1957)..................................................................14, 16

*Turner v. U.S. Agency for Global Media,*
    502 F. Supp. 3d 333 (D. D.C. 2020)...............................................20

*Urofsky v. Gilmore,*
    216 F.3d 401 (4th Cir. 2000).........................................................17

*Univ. of Pennsylvania v. E.E.O.C.,*
    493 U.S. 182 (1990)..................................................................14, 15

*Van Poyck v. Singletary,*
    11 F.3d 146 (11th Cir. 1994).......................................................... xii

*Walker v. Jones,*
    10 F.3d 1569 (11th Cir. 1994)...........................................................8

*Wright v. Hanna Steel Corp.,*
    270 F.3d 1336 (11th Cir. 2001)......................................................10

4864-2663-1864, v. 1

*Zen Group, Inc. v. Agency for Health Care Admin.,*
    80 F.4th 1319 (11th Cir. 2023).........................................................................23

**Statutes**

*28 U.S.C. § 2107 ...................................................................................... xii

## JURISDICTIONAL STATEMENT

This Court lacks subject matter jurisdiction in this case because Burt failed to timely file a notice of appeal.

In March 2022, Burt initiated this litigation against the University in the Gainesville Division of the United States District Court for the Northern District of Florida ("District Court"). (App. at 11-40). In the operative four-count Complaint, Burt alleged that the University violated his rights under the First and Fourteenth Amendments, as enforced through 42 U.S.C. §§ 1983 and 1988. Burt sued the University of Florida's ("UF") President, W. Kent Fuchs, in his official capacity, and three UF administrators, David E. Richardson, Mary Watt, and Sidney Dobrin, in their individual capacities. Accordingly, the district court had federal question jurisdiction over Burt's claims. 28 U.S.C. § 1331.

On June 21, 2023, the district court granted the University's Amended Motion to Dismiss finding that Burt's Complaint failed to plausibly allege that his constitutional rights to free speech and procedural due process had been violated but allowed Burt an opportunity to file an amended complaint. (App. at 42-70). Pursuant to the Court's Order, Burt was required to file an amended complaint on or before July 3, 2023. (App. at 70). However, Burt elected not to do so within the timeframe set by the district court. Accordingly, on July 14, 2023, the district court directed the clerk to enter judgment stating, "Plaintiff's claims are dismissed" and close the

file. (Doc. 39). Shortly thereafter, on the same day, the Clerk entered judgment. (App. at 72). On August 10, 2023, Burt filed a Notice of Appeal. (Doc. 41).

As this Court has recognized, "[t]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement, and [the Court] cannot entertain an appeal that is out of time." *Pierre v. United States*, No. 23-10241, 2023 WL 8720019, at *1 (11th Cir. Dec. 18, 2023) (citing *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 21 (2017) (holding that 28 U.S.C. § 2107's timing requirements are jurisdictional)); *Green v. Drug Enf't Admin.*, 606 F.3d 1296, 1300 (11th Cir. 2010)). To be timely, a notice of appeal in a civil proceeding "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a).

The law of this Circuit is clear in that a district court's order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff filing an amended complaint or seeking an extension. *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 716-20 (11th Cir. 2020); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132-33 (11th Cir. 1994). An order of dismissal becomes a final judgment for purposes of appeal on the date that the deadline to amend expires because "there is nothing left for the district court to do." *Van Poyck v. Singletary*, 11 F.3d 146, 149 (11th Cir. 1994); *see also Fernandez v. Freedom*

*Health, Inc.*, No. 22-13823, 2023 WL 4196950, at *3 n.1 (11th Cir. Jun. 27, 2023) (citing *Schuurman v. Motor Vessel Betty K V*, 798 F.2d 442, 445 (11th Cir. 1986)); *Davis v. Advocate Health Ctr. Patient Care Exp.*, 523 F.3d 681, 683 (7th Cir. 2008) (noting "the order becomes an appealable 'final decision' once the time for correction has expired, whether or not the court enters a final judgment.").

This Court lacks jurisdiction over this appeal because Burt failed to timely file a notice of appeal by August 2, 2023, which was 30 days from July 3, 2023 – the deadline for Burt to file an amended complaint and the date that the district court's order dismissing his Complaint became a final judgment. *See* (App. at 70). Burt filed his Notice of Appeal on August 10, 2023, eight days after his deadline to appeal had expired. (App. at 74).   Because Burt's appeal was untimely, this Court lacks jurisdiction. *See* 28 U.S.C. § 2107.

## STATEMENT OF THE ISSUES

I.      Whether this Court has jurisdiction over Burt's untimely appeal.

II.     Whether Burt should be precluded from presenting a new legal theory on appeal, specifically that "*Garcetti* does not apply at all on public college campuses."

III.    Whether an "academic freedom exception" applies to *Garcetti* and whether such exception applies to Burt's speech in this case.

IV.     Whether the district court properly dismissed Burt's First Amendment claims after concluding that his e-mails did not constitute protected speech under *Garcetti*.

V.      Whether the district court properly dismissed Burt's First Amendment claims asserted against Richardson, Watt, and Dobrin individually after concluding that they were entitled to qualified immunity.

VI.     Whether the district court properly dismissed Burt's procedural due process claims under the Fourteenth Amendment after concluding that he failed to plead any factual allegations demonstrating that prior to filing his lawsuit, he unsuccessfully pursued any and all remedies made available to him through UF's internal policies or under Florida law.

1

## STATEMENT OF THE CASE

Prior to the start of its Fall 2021 semester, Burt learned from an administrative memo that University faculty were permitted to teach remotely for the first three weeks of the Fall 2021 semester. (App. at 17). Then, a few days later, UF announced that remote teaching was no longer an option. (App. at 17). Burt was concerned about in-person teaching because he was concerned for his own personal health. (App. at 17). Specifically, Burt was "concerned about the return to personal contact because he was vulnerable to a Covid infection because of several surgeries, being 67 years old and suffering various infirmities of age" and, at the time, he had "been able to secure only two of the three [COVID-19] vaccinations." (App. at 17). Despite receiving an email from President Fuchs informing faculty that "remote teaching was no longer an option for the Fall 2021 semester," Burt ostensibly believed he was still permitted to teach his courses remotely. (App. at 17-19). After being informed by his Department Chair, Dobrin, that all classes had to be taught in person, Burt took the following actions:

> On August 23, 2021, [Burt] notified the students in his classes [via email] that they would be meeting remotely so they should not show up at the classroom. He attached to the email a statement from the president of the faculty union at UF, Paul Ortiz, criticizing UF's poor compliance with CDC guidelines on Covid and urging certain specific improvements.

(App. at 19). Burt then sent a second email to his classes on August 23, 2021,

stating that he had been ordered, by his Chair, against his will, to teach his classes face-to-face . . . The email then stated, "You may stop reading here. If you want to learn what happened, you may keep reading. YOU ARE NOT REQUIRED TO KEEP READING. YOU MAY STOP HERE." [Following this statement, Burt included] a reproduction of the email exchanges between Burt and Dobrin.

(App. at 21). In addition to sending the foregoing emails, Burt used the following title in his signature block, "Herr Doktor Rev. Professor Blind Burt Ph.4KUltraHD, Department of loser Studies, Pharmakonology, and Cosmic Criticism." (App. at 28). In the Complaint, Burt acknowledges that he had been "admonished" for using this title in his signature block on a previous occasion. (App. at 28).

Following transmittal of the foregoing email to students, Burt was instructed to cancel his classes and was placed on administrative leave, with pay, pending investigation by UF. (App. at 21-22). Burt was further required to submit to a psychological examination. (App. at 22). UF investigated Burt's actions and determined he violated various University regulations and the Collective Bargaining Agreement. (App. at 23-24).

As a result, Richardson and Dobrin, in the course and scope of their employment as administrators, sent Burt a letter informing him that the University proposed suspension without pay for five days and required the following actions by Burt: (1) compliance with all university rules and all directions of the Chair, Dean and University leadership; (2) to ensure all student-related email communications were professional and applicable to the immediate discussion; (3) to use his correct

3

signature block; and (4) to obtain training in email effectiveness and cultivating judgment. (App. at 30-31). The proposed disciplinary action has not yet been implemented by UF. (Initial Brief at 48).

4864-2663-1864, v. 1

## SUMMARY OF THE ARGUMENT

This Court lacks subject matter jurisdiction in this case because Burt failed to timely file a notice of appeal.  Because Burt was given leave to amend his complaint by the District Court, and failed to do so within the time allotted, his deadline to file the appeal was August 2, 2023.  Burt filed this appeal on August 10, 2023 which was eight days late.  Therefore, the appeal should be dismissed.

In the event this Court determines Burt's appeal was timely or permits Burt to proceed with the appeal in the interest of justice, the District Court properly granted Appellees' Amended Motion to Dismiss.

First, Burt should be precluded from presenting a new legal argument, that "*Garcetti* does not apply at all on public college campuses," because Burt failed to raise this issue for the District Court's consideration.  Moreover, Burt does not meet any of the five criteria outlined by this Court to permit review of a new issue for the first time on appeal.

Moreover, to the extent an "academic freedom exception" exists under *Garcetti*, Burt's speech does not fall under the exception.  The speech at issue in this case is two emails by Burt to the students enrolled in his courses regarding the fact that the courses would be held in-person, not remotely.  The foregoing speech does not involve scholarship, teaching, or University governance with regard to academic

5

issues. Instead, Burt's speech involves the logistical and administrative task of setting a course format.

The District Court properly applied *Garcetti* to Burt's claims and properly determined that Burt spoke pursuant to his duties as a public employee, and not a citizen. Furthermore, Burt did not speak on "an issue of public concern," but instead spoke in defiance of the in-person teaching requirement to raise a private grievance regarding his concerns related to his personal health.

The District Court properly concluded that Richardson, Watt, and Dobrin are entitled to qualified immunity. Neither specific case law nor the core of federal constitutional values clearly establishes that Burt's emails were protected speech. Furthermore, while a plaintiff can show that a defendant is not entitled to qualified immunity by proving that the conduct is so obviously at the core of what the Constitution prohibits that the unlawfulness of the conduct was readily apparent, Burt cites to no authority supporting his assertion that this narrow exception should apply to this case.

Finally, the District Court did not error in dismissing Burt's procedural due process claim. The law is clear that, while there is no "exhaustion requirement," an employee must utilize state remedial procedures prior to bringing a procedural due process claim. In this case, Burt failed to allege (and in fact cannot allege) that he made any attempts to utilize the appellate processes either through UF or via the

state courts.  Accordingly, dismissal of Burt's claims for procedural due process was

proper.

4864-2663-1864, v. 1

# **ARGUMENT**

## I.    **Burt is precluded from presenting new legal theories for the first time on appeal**

Burt should be precluded from presenting a new legal theory for the first time on appeal, namely, that "*Garcetti* does not apply at all on public college campuses." It is "well settled" in the Eleventh Circuit that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004). Further, the Eleventh Circuit has "repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered…'" *Id.* (*citing Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting *Depree v. Thomas,* 946 F.2d 784, 793 (11th Cir. 1991)). "The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions—particularly fact-bound issues—that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.* at 1331.

The major point of contention in the District Court was whether the "academic freedom" exception as interpreted from *Garcetti* extended First Amendment protection to the speech made by Burt and whether the test articulated in *Garcetti* was appropriately applied by the District Court. *See Garcetti v. Ceballos,* 547 U.S.

410 (2006). However, for the first time in his Initial Brief, Burt raises a legal theory that had not previously been raised. In Burt's Response in Opposition to Motion to Dismiss, Burt argued that Burt's speech was protected by the First Amendment because he spoke both as a citizen and on a matter of public concern. (Doc. 15 at 5-12). Burt then argued that the Individual Defendants were not entitled to qualified immunity and that his Complaint adequately plead a claim for equitable relief. (Doc. 15 at 12-17). After the District Court dismissed the Complaint, Burt filed a Motion for Rehearing, arguing that the District Court failed to consider the "academic exception" set forth in *Garcetti* and argued that this "academic exception" applied to Burt. *See* (Doc. 24).

The District Court granted, in part, Burt's Motion for Rehearing. (Doc. 26). Burt subsequently filed a Response in Opposition to Amended Motion to Dismiss Complaint. At this second bite of the apple, Burt again argued, in relevant part, that the "academic exception" in *Garcetti* applied to Burt and the District Court should evaluate Burt's claims under *Pickering v. Board of Education of Township Highschool District 205.* (Doc. 30). Notably missing from Burt's argument, despite the parties' extensive briefing, is any mention by Burt that *Garcetti* does not apply to any speech on public university campuses. Undeniably, Burt now makes this argument for the very first time in his Initial Brief pending before this Court.

There are five circumstances that would allow appellants to potentially raise a new issue for the first time on appeal:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below ... where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Access Now, Inc.* 385 F.3d at 1332 (*citing Wright v. Hanna Steel Corp.,* 270 F.3d 1336, 1342 (11th Cir. 2001) (*quoting Narey v. Dean,* 32 F.3d 1521, 1526–27 (11th Cir. 1994) (*quoting Dean Witter Reynolds,* 741 F.2d at 360–61 (footnotes and internal citations omitted))) (alteration in original). However, even if this new legal theory fell within any of these five circumstances, the Court's decision to hear the argument remains discretionary. *Id.*

Notwithstanding, none of the foregoing five circumstances apply to this case. First, the new legal theory Burt proposes is not purely a question of law. Here, Burt is asking the Court to evaluate *Garcetti* in such a way that not only will it need to evaluate *why* the case doesn't apply to public college campuses but whether communications from a professor to his students via email would even fall within the scope of what constitutes speech actually made on a public college campus. This

would require additional factual considerations that the district court did not have the opportunity to undertake.

Second, Burt indeed had an opportunity to raise this issue at the district court level but did not utilize that opportunity to make the argument he is attempting to make now on appeal. After Appellee's initial Motion to Dismiss was granted, Burt filed his Motion for Rehearing arguing that the District Court did not address *Garcetti's* "academic exception" that extended First Amendment protections to the speech at issue. (Doc. 24).  Not once did Burt raise the possibility that *Garcetti,* in the alternative, did not even apply to public college campuses like the University of Florida. Burt should not be allowed to raise this new legal theory on appeal, particularly because he failed to do so at the district court level.

Furthermore, Burt cannot argue that raising this new legal theory at this time constitutes an "interest of substantial justice [that] is at stake." *See Access Now, Inc.* 385 F.3d at 1332.  If this was such an important theory that went to the crux of Burt's argument, it should have been raised in Burt's Motion for Rehearing or argued in either of Burt's responses to Appellee's motions to dismiss.  (Docs. 15; 24; 30). Burt should not be permitted to raise this new legal theory just because his other legal arguments failed at the lower court level, particularly when he was given two opportunities to do so by the District Court.

11

As discussed above, this Court will be required to undergo additional factual considerations in order to evaluate Burt's new legal theory which was not previously evaluated by the district court. Therefore, this issue is clearly not one where the answer is apparent on its face and "beyond any doubt" which would merit review under the fourth exception. *See id.*

As for the fifth exception, Burt's speech does not present a significant issue of public concern because the speech at issue was only transmitted to Burt's students solely for the purpose of informing them the manner in which his class would be taught, i.e. in person. That his speech was mixed with his own opinion regarding a global pandemic does not transform the speech into one presenting a significant issue of public concern.

Because Burt's presentation of this new legal theory for the first time in his Initial Brief does not fall into any of the five circumstances where the Court would have discretion to review it at the appellate level, Burt should be precluded from asserting this issue any further.

## II.    The District Court properly applied *Garcetti* to the facts of this case

### A. Burt's argument that *Garcetti* does not apply to public universities is unsupported

Pursuant to *Garcetti v. Cevallos*, 547 U.S. 410 (2006), when evaluating a claim under the First Amendment brought by a public employee, a court must determine (1) did the employee speak "as a citizen" and (2) was the speech made by

the employee "on a matter of public concern?"  547 U.S. at 418 (citing *Pickering v. Bd. of Educ. Of Township High Sch. Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968)). The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 421.  The Supreme Court recognized the concerns of the application of the *Garcetti* holding and the preservation of academic freedom stating "[w]e need not, and . . . do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to **scholarship and teaching.**"  *Id.* at 425 (emphasis added).

Burt attempts to persuade the Court that the notion of academic freedom should be applied more broadly than any court has done as of the filing of this appeal. (Initial Brief, p. 25-44).  In doing so, Burt argues for the first time that "*Garcetti* does not apply **at all** to public college campuses" and that the notion of academic freedom should not be "limited" to scholarship and teaching.  (Initial Brief, p. 26) (emphasis added).    However, the authority cited by Burt does not support his assertions.

First, Burt relies on *Meriwether v. Hartop* to support his overly broad view of academic freedom.  (Initial Brief, p. 27).  In *Meriwether*, the Sixth Circuit evaluated whether *Garcetti* applied to a professor's speech and examined the scope of

academic freedom finding that Supreme Court precedent establishes "that the First Amendment protects the free-speech rights of professors when they are teaching." 992 F. 3d 492, 505 (6th Cir. 2021).  The Sixth Circuit stated that "professors at public universities retain First Amendment protections at least when engaged in core academic functions, such as teaching and scholarship."  *Id.*  Notably, neither *Meriwether* nor the Fourth, Fifth, or Ninth Circuits with which the *Meriwether* court expressly joined, stand for the premise that all "campus speech" falls outside the scope of *Garcetti*.

Moreover, Burt's argument relies on *Keyishian v. Bd. of Regents* and claims that in *Keyishian*, "no teaching or research was at issue."  (Initial Brief, p. 30).  However, the Supreme Court was clear that one reason the law was found to be unconstitutional was due to its vagueness, as illustrated by the inability of educators to determine what was appropriate to teach and the chilling effect it would have on their speech as a result.  585 U.S. 589, 599-603 (1967).  Similarly, in *Sweezy v. State of N.H.*, the Supreme Court discussed, generally, the policies underlying academic freedom, in the context of an inquiry by the Attorney General into the subject matter of a lecture given at the University of New Hampshire at the invitation of the course instructor.  354 U.S. 234, 243-250 (1957).  Indeed, both *Sweezy* and *Keyishian* are cases in which the "government was attempting to control or direct the *content* of the speech engaged in by the university or those affiliated with it."  *Univ. of*

14

*Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 197 (1990). Notwithstanding the difference in the core issues, both cases discuss the academic freedom issue in the context of scholarship and teaching.

Burt also attempts to rely on *Grutter v. Bollinger*, 539 U.S. 306 (2003), but this is inapposite as it was brought by law school applicants and does not discuss the concept of academic freedom as applied to speech by university faculty. Finally, Burt discusses *Shelton v. Tucker*, 364 U.S. 479 (1960), but this case discusses freedom of association, not academic freedom as applied to speech and is, therefore, not applicable to this case. As the District Court observed,

> *Garcetti*'s majority did not exempt official speech in the field of education generally—only in cases "involving speech related to scholarship or teaching," particularly "classroom instruction." Furthermore, Justice Souter's concern, to which the *Garcetti* majority responded, centered on "*academic freedom* in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.'" *Id.* at 438 (Souter, J., dissenting) (quoting *Grutter*, 539 U.S. at 329) (emphasis added). Thus, both the carve-out and the reasoning that prompted the carve out leave within *Garcetti*'s ambit professors' speech—including classroom speech—not implicating "academic freedom" or "related to scholarship or teaching."

(App. at 56). Accordingly, while Supreme Court majority in *Garcetti* expressed concern about limiting speech related to scholarship, teaching, and classroom instruction, and subsequent court opinions throughout the federal courts address this concern, Burt's blanket assertion that "*Garcetti* does not apply at all to public college campuses" is unsupported and, therefore, lacks merit.

**B. Because Burt's speech was not related to scholarship or teaching, the District Court properly applied *Garcetti***

As discussed above, in *Garcetti* the Supreme Court explicitly stated that it was not deciding whether the holding in *Garcetti* would apply to a case involving speech related to scholarship and teaching. *Garcetti*, 547 U.S. at 425. This purported "academic exception" arose from concerns that "expression related to academic scholarship or classroom instruction" may implicate "additional constitutional interests that are not fully accounted for by [the] Court's customary employee-speech jurisprudence." *Id*. "As this language and the line of cases from which this exception flows demonstrate, the exception relates to academic scholarship or classroom instruction." *Sadid v. Vailas*, 936 F. Supp. 2d 1207, 1224 (D. Idaho 2013) (*citing Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 312 (1978) and *Sweezy v. New Hampshire,* 354 U.S. 234, 263 (1957)). In determining whether to apply *Garcetti*, the question is whether the speech at issue was made by "public university faculty members, acting in their official capacity, that is related to scholarship or teaching." *Porter v. Bd. of Trustees of N. Carolina State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 693 (2024).

Burt argues that his speech is "academic speech" in the form of "intramural speech." (Initial Brief at 52). According to Burt, "intramural speech" is faculty speech "about the action, policy, or personnel of a faculty member's home institution." (Initial Brief at 52). However, Burt provides no authority to support a

16

finding of academic freedom for "intramural speech." (Initial Brief at 41-45). Burt argues, without citation to any authority, that "[t]he right of faculty to speak about governance is so essential a part of academic freedom that it is part of collective bargaining contracts . . . ." (Initial Brief at 42).  However, the issue of academic freedom is not as settled as Burt asserts. *See Adams v. Trustees of the Univ. of N.C.-Wilmington,* 640 F.3d 550, 557 (4th Cir. 2011) referencing *Urofsky v. Gilmore,* 216 F.3d 401, 412 (4th Cir. 2000) (" . . . . observing that [academic freedom] is a 'term that is often used, but little explained, by federal courts,' and noting that the Supreme Court has not established 'a First Amendment right of academic freedom that belongs to the professor as an individual,' but rather 'to the extent [the Supreme Court] has constitutionalized a right of academic freedom at all, [it] appears to have recognized only an institutional right of self-governance in academic affairs.'")

Furthermore, to the extent academic freedom does encompass university governance, there are still limitations on how far that freedom extends. The Third Circuit has discussed the difference between the rights of a professor inside the classroom as opposed to their rights outside the classroom. *Brown v. Armenti*, 247 F.3d 69, 75 (3d Cir. 2001); *see also Edwards v. California University of Pennsylvania,* 156 F.3d 488 (3d Cir. 1998). "The professor is 'in the classroom' when he is "acting at the university's proxy, fulfilling one of the functions involved in the university 'four essential freedoms: choosing who may teach, what may be taught,

how it shall be taught, and who may be admitted to study.'" *Id.* (citing *Edwards,* 156 F.3d at 492). Thus, for example, a pedagogic act such as grading is "subsumed under the university's freedom to determine how a course is to be graded" and "a public university professor does not have a First Amendment right to express via the school's grade assignment procedures." *Id.* The Sixth Circuit has held same. *See Johnson-Kurek v. Abu-Absi,* 423 F.3d 590 (6th Cir. 2005). Where a professor is expected to "spell out in detail the requirements" of receiving a final grade in her class, and refuses to do so because of her pedagogical beliefs, the First Amendment and the notion of academic freedom does not protect her from the university's ultimate authority to decide how its students are taught and graded. *Id.* at 595. "The freedom of a university to decide what may be taught and how it shall be taught would be meaningless if a professor were entitled to refuse to comply with university requirements whenever they conflict with his or her teaching philosophy." *Id.*

By the same token, Burt does not have any First Amendment right to circumvent the University's ultimate decision-making authority for its students just because he disagrees with an administrative policy of the University, i.e. format in which his class would be held. Further, although the speech Burt made was over email and not physically inside a classroom, he was still acting as a proxy for the University and nonetheless bound by decisions of the University made pursuant to its *own* academic freedoms. In this case, Burt was simply required to relay the

University's determination to hold classes in-person to his students. Burt was not permitted, however, to interject his own opinions beyond the scope of his role as the University's proxy. Burt's emails were in furtherance of a non-ideological ministerial task of informing students where and the manner in which class would be held. While Burt attempts to characterize his emails as a righteous ideological crusade against the "Desantis regime['s]" COVID-19 policies, his efforts do not change the fact that, at their core, his emails were merely instructions as to where students were required to attend lectures.

As the District Court observed, "[Burt's] speech—emails sent to students in order to coordinate logistics for upcoming classes, along with information superfluous to that coordination—was not teaching or uttered in a teaching setting." (App. at 57). "[Burt] sent [the emails] as part of his 'non-ideological ministerial' responsibility to carry out 'university policy' on class meetings by communicating the mode of those meetings." (App. at 57) (*citing Meriwether*, 992 F.3d at 507; *Adams*, 640 F. 3d at 563). "[Burt's] editorializing about that responsibility in his e-mail does not convert them to teaching or scholarship." (App. at 57). Indeed, when sending the two emails that are at issue in this case, Burt was not engaged in any classroom speech nor was his speech related to "scholarship or teaching." The University's policy that Burt's emails addressed was entirely unrelated to Burt's scholarship or teaching as an English Professor, and Burt's speech to his students in

the emails was made in carrying out the duty of declaring and administering the University's policy. Burt's disagreement with the policy does not change the nature of his speech, nor does it provide him with additional constitutional protections. Moreover, Burt's speech was not one of scholarship, such that any alleged academic freedom would apply.  In this case, there is no connection between Burt's field of study, English, and the speech he alleges is protected, i.e. commentary on the University's decision regarding course scheduling in the wake of COVID-19.

Academic freedom concerns are not present in this case because Burt's speech did not occur "in the classroom" and was not related to scholarship or teaching, therefore, the District Court properly applied the balancing test set forth in *Garcetti*. *See Adams v. Tr. of the Univ. of N.C. Wilmington*, 640 F. 3d 550, 563 (4th Cir. 2011); *see also Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 374 (D. D.C. 2020) (recognizing that *Garcetti* likely applies to university professors' speech "related to activities undertaken 'pursuant to official duties' outside of [the] heartland [of the core functions of teaching and writing].")

### C. The District Court correctly held that Burt was speaking as a public employee and not as a citizen

After concluding that the "academic exception to *Garcetti* exists, but it does not encompass Plaintiff's emails," the District Court properly applied *Garcetti* to the facts of this case. (App. at 60).  When applying *Garcetti*, the first question is whether Burt spoke as a citizen or an employee.  *Alves v. Bd. of Regents of the Univ. Sys. of*

20

*Georgia*, 804 F.3d 1149, 1163 (11th Cir. 2015).  To determine whether a public employee speaks as a citizen, courts ask whether the employee's speech "owes its existence to [the] employee's professional responsibilities." *Garcetti*, 547 U.S. at 421-22.  "If an employee speaks in furtherance of his responsibilities as an employee, then the speech is made as an employee, not as a citizen, and is not entitled to First Amendment protections." *Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 951 (N.D. Fla. 2015) (citing *Moss v. City of Pembroke Pines*, 782 F.3d 613, 619–20 (11th Cir. 2015).  "Activities undertaken in the course of performing one's job are activities undertaken pursuant to employment responsibilities." *Alves*, 804 F.3d at 1164.

In determining what the employee's responsibilities are, "the proper inquiry is a practical one." *Garcetti*, 547 U.S. at 424.  "[T]he controlling factor is whether the employee's statements or expressions were made pursuant to [his] official duties." *Alves*, 804 F.3d at 1161.  "Activities undertaken in the course of performing one's job are activities undertaken pursuant to employment responsibilities." *Id.* at 1165.  "A court must therefore discern the purpose of the employee's speech—that is, whether [he] spoke on behalf of the public as a citizen, or whether the employee spoke for [himself] as an employee." *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007).

The following speech forms the basis for Burt's claim:

a) On August 23, 2021, [Burt] notified the students in his classes [via email] that they would be meeting remotely so they should not show

up at the classroom. He attached to the email a statement from the president of the faculty union at UF, Paul Ortiz, criticizing UF's poor compliance with CDC guidelines on Covid and urging certain specific improvements; (App. at 19) and

b) [Burt] sent [an] email to his classes, on August 23, 2021, stating that he had been ordered, by his Chair, against his will, to teach his classes face-to-face (hereinafter F2F). The email then stated, "You may stop reading here. If you want to learn what happened, you may keep reading. YOU ARE NOT REQUIRED TO KEEP READING. YOU MAY STOP HERE." There followed a reproduction of the email exchanges between [Burt] and Dobrin. (App. at 21).

It is clear from the allegations in the Complaint that Burt was speaking as an employee and not a citizen. The emails sent by Burt on August 23, 2021 were sent to students who were enrolled in Burt's courses and were related to the location where, and manner in which, the course would be taught. As the District Court observed, Burt sent the emails "to establish the format of his English courses, which he is employed to teach, and sent them only to those students he was responsible for teaching." (App. at 62). Because Burt spoke as an employee, his speech does not implicate the First Amendment.

Burt argues that the emails contain both portions of "employee" speech and portions of "citizen" speech, and because he believes his discipline stemmed from the "citizen" portion, it is protected. (Initial Brief at 40-41). The District Court addressed this argument in its Order noting that "[i]f *Garcetti's* purpose is to allow the government to control its own communications, parsing government

communications for, and extending First Amendment protection to, citizen speech gratuitously sprinkled in would render *Garcetti's* holding worthless." (App. at 64).

Moreover, Burt's speech was not made on an "issue of public concern." Notably, "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection" but that "teachers whose speech directly affects the public's perception of the quality of education in a given academic system find their speech protected." *Zen Group, Inc. v. Agency for Health Care Admin.*, 80 F.4th 1319, 1330 (11th Cir. 2023). In determining whether the speech was on an issue of public concern, the Court should consider "whether the main thrust of the speech in question is essentially public in nature or private." *Alves*, 804 F.3d 1149at 1162. Moreover, when only a portion of the speech relates to a matter of public concern, that portion "must be directed to such concerns and may not merely touch up against matters of public concern." *Zen Group, Inc. v. Agency for Health Care Admin.*, 80 F.4th 1319, 1331 (11th Cir. 2023). "Vague and sweeping references—for example, to 'the safety and well-being of students' or 'an adverse impact on client care'—without reference to specific instances in which those issues have arisen are insufficient, particularly when coupled with great detail and specific examples regarding "personal grievances." *Id.*

Appellants do not dispute the State of Florida's COVID-19 response has been a matter of much political debate and discourse throughout the pandemic and

continued to be a heated topic of discussion in August 2021. However, the fact that Burt's emails related to the administration of UF's COVID-19 practices does not automatically make Burt's speech a matter of public concern. The allegations in the Complaint reveal that the purpose of the email communications was to raise a private employee grievance and was not intended to address a matter of public concern from the perspective of a citizen. *See* (App. at 11-33). Indeed, Burt's emails were sent on August 23, 2021, after he was personally informed he would not be permitted to teach remotely, not directly in response to President Fuchs's August 13, 2021 memorandum informing the broader University community that remote teaching was no longer an option for the Fall 2021 semester. (App. at 17-21). The allegations in the Complaint reveal that the main thrust of Burt's speech is more akin to a private employee grievance, particularly in light of Burt's personal concerns "about the return to personal contact because he was vulnerable to a Covid infection because of several surgeries, being 67 years old and suffering various infirmities of age, and having thus far been able to secure only two of the three vaccinations." (App. at 17).

The clear purpose of Burt's speech was to communicate to the students in his courses that he was required to teach the course in person "against his will" due to concerns about his personal health. (App. at 21). Thus, the speech alleged in the Complaint is a work-place grievance related to UF's internal administration about

the location of its courses, and Burt's speech was not protected by the First Amendment. *See Maples v. Martin*, 858 F. 2d 1546, 1552-1553 (11th Cir. 1988) ("courts have found speech that concerns internal administration of the educational system and personal grievance will not receive constitutional protection"). Because Burt was speaking as a public employee on a matter that was a personal work-place grievance, his speech is not protected by the First Amendment and the District Court properly dismissed his complaint.

## III.   The District Court properly found that the Individual Defendants are entitled to qualified immunity

Qualified immunity "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1289 (S.D. Fla. 2012) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010)). Specifically, a defendant must show that he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his [or her] power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The Court must grant qualified immunity unless the allegations show (1) there was a violation of the Constitution; and (2) the illegality of the defendant's actions was clearly established at the time of the incident. *Hoyt v. Cooks,* 672 F.3d 972, 977

(11th Cir. 2012). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) (citation and internal quotation marks omitted). "Thus, unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.*

## A. The District Court properly determined that neither case law nor federal constitutional values clearly establish that Burt's emails were protected speech.

Plaintiff argues that *Pickering* and *Garcetti* are clearly established law that gave the Individual Defendants "fair warning that the adverse actions against plaintiff were unconstitutional." (Initial Brief at 56).[1] It is difficult to fathom how *Garcetti* would provide the Individual Defendants with "fair warning" their decisions were unconstitutional, when Burt argues that "*Garcetti* does not apply at all on public college campuses." (Initial Brief at 15). Moreover, "the *threshold inquiry* for deciding if qualified immunity is appropriate is *determining under First Amendment, government-speech law whether there has been a constitutional violation by the government employer.*" *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th

---

[1] Burt appears to concede that the Individual Defendants were acting within the scope of their discretionary authority. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). Therefore, Appellants do not address this issue.

Cir. 2007) (emphasis in original). Here, because there has been no constitutional violation by the University, the Individual Defendants are entitled to qualified immunity.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Carollo v. Boria*, 833 F. 3d 1322, 1333 (11th Cir. 2016). In this Circuit, two methods are used to determine whether a reasonable official would understand his conduct violates a constitutional right: (1) "whether binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in [Florida] gave the defendant fair warning that his treatment of the plaintiff was unconstitutional" and (2) "whether a public official's conduct lies so obviously at the very core of what federal law prohibits that the unlawfulness of the conduct was readily apparent to the public official, notwithstanding the lack of fact-specific case law on point." *Carollo*, 833 F. 3d at 1333.

There are no Eleventh Circuit or United States Supreme Court cases which would have given Richardson, Watt, or Dobrin reasonable notice that, taking into consideration the context, content, and forum of Burt's speech, disciplining Burt would subject Defendants to Section 1983 liability. Moreover, as outlined in detail above, the allegations in this case fail to establish that Burt was disciplined for

27

engaging in protected speech.  Indeed, a reasonable official could consider Burt's speech to have occurred in the performance of his job duties and as part of a personal grievance, albeit to an improper audience, regarding Burt's working conditions and, therefore, determine that Burt's speech was not protected by the First Amendment.

## B. Burt's argument that the Individual Defendant's conduct was "so obviously unconstitutional that its unlawfulness was readily apparent" lacks merit

"Where no past case is 'materially similar' and a constitutional violation cannot be established through a 'broader, clearly established principle,' a plaintiff can still show that a defendant is not entitled to qualified immunity by proving that the defendant's conduct lies so obviously at the core of what the Constitution prohibits that the unlawfulness of the conduct was readily apparent to the defendant, notwithstanding the lack of fact-specific case law." *Martin v. Chancellor for Bd. of Regents of Univ. Sys. of Georgia*, No. 22-12827, 2023 WL 4131443, at *6 (11th Cir. June 22, 2023) (*citing J W by and through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259–60 (11th Cir. 2018)).  "Cases that fall under this narrow exception are rare and don't arise often . . . [a]nd these situations are frequently reserved for instances where officers exert their physical will on a plaintiff in an 'outrageous' way in an obvious violation of the Fourth Amendment." *Id.* (internal citations omitted); *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) ("'obvious clarity' cases will be rare").  Burt, without citation to any authority, asks this Court

28

to apply this narrow, rare exception to this case. (Initial Brief at 47). However, there is no objectively reasonable argument that disciplining Burt for forwarding students copies of internal University administrative emails "lies so obviously at the core of what the [First Amendment] prohibits that the unlawfulness of the conduct was readily apparent" to the Individual Defendants.

## IV. The District Court properly found that the University did not violate Burt's right to procedural due process

There can be no procedural due process deprivation "before the employee utilizes appropriate, available state remedial procedures." *McKinney v. Pate*, 20 F. 3d 1550, 1560 (11th Cir. 1994)). Moreover, even if an available procedure is inadequate, there is still no deprivation "unless and until the state fails to remedy that inadequacy." *Id.* The University does not dispute that *McKinney* is not an exhaustion rule. *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1299-1300 (11th Cir. 2000). But *McKinney* requires that a state must have the opportunity to remedy any procedural deficiencies before being sued for a procedural due process violation. *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

To survive a motion to dismiss, Burt must "allege that he has attempted to make use of whatever state law avenue for relief is available to him and that the remedial procedure is inadequate." *Carruth v. Bentley*, 942 F. 3d 1047, 1060 (11th Cir. 2019). Burt argues that the District Court "read *McKinney* in a way that conflicts

with the Supreme Court in *Patsy* [*v. Board of Regents*, 457 U.S. 496 (1982)]." (Initial Brief at 59). However, in upholding the dismissal of a complaint because the state did not entirely fail to provide the plaintiff with a process to challenge the employment decision, this Court has stated, "we note that binding precedent forecloses [appellant's] argument that *McKinney* and *Cotton* were wrongly decided . . . we are bound by our prior precedent." As the District Court observed, Burt failed to allege that "he availed himself of any disciplinary appeal process or remedy available under Florida law or, alternatively, that no such process or remedy is available." (App. at 69). In fact, Burt admits that the University has only issued Burt a notice of proposed suspension but has not issued Burt a final notice of suspension stating, "the penalty he sought to enjoin had not yet been imposed." (Initial Brief at 60); *see also* (App. at 33) (referencing the "proposed five-day suspension"). There is no question that Burt has not participated in any of the appellate processes available to him. Accordingly, Burt's procedural due process claim was appropriately dismissed. *Faucher v. Rodziewicz*, 891 F.2d 864, 870 (11th Cir. 1990) (defendant's extensive internal appeals procedures, although not utilized by the plaintiff, were able to fully protect her constitutional rights to procedural due process).

In addition to alleging he was deprived of a protected property or liberty interest regarding his proposed suspension, Burt alleges these rights were violated

because the discipline "nullifies" his rights as a tenured professor by stating "any future violations will result in the termination of Burt's employment as a tenured professor." However, the discipline alleged does not implicate any such interest. Indeed, nothing in the proposed disciplinary process strips Burt of tenure, or the additional considerations tenure provides to UF's faculty. The remaining discipline alleged by Burt is a requirement to "[1] comply with all university rules and all directions of the Chair, Dean and university leadership; [2] make all student-related email communications professional and applicable to the immediate discussion; [3] use the correct signature block; and [4] take courses in email effectiveness and cultivating judgment." (Doc. 1, p. 21). As these requirements involve no loss of pay or rank, Burt has not and will not be deprived of a protected or property interest. *See Faucher v. Rodziewicz*, 891 F.2d 864, 870 (11th Cir. 1990); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988).

Because Burt has not, and in fact cannot, allege that he has availed himself of the disciplinary appeal process or remedy available under Florida law, the District Court properly dismissed his claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellees respectfully submit that the District Court's decisions at issue in this appeal should be affirmed in all respects.

Dated this 22nd day of April 2024.

31

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.


By:_____
    Michelle Bedoya Barnett
    Florida Bar No. 0823201
    Email: michelle.barnett@adblegal.com
    Samantha Giudici Berdecia
    Florida Bar No. 0058667
    E-mail: samantha.giudici@adblegal.com
    E-mail: mailbox@adblegal.com
    1500 Riverside Avenue
    Jacksonville, FL 32204
    (904) 345-3277 Telephone
    (904) 345-3294 Facsimile
    *Counsel for Appellees*


## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f) and 11th Cir. R. Rule 32-4, this document contains 8,006 words. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


_____
                Attorney

4864-2663-1864, v. 1

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will automatically generate and send by e-mail a Notice of Docketing Activity to all CM/ECF registered users, including:

> Richard E. Johnson
> Law Office of Richard E. Johnson
> 314 West Jefferson Street
> Tallahassee, Florida 32301
> Tel.: (850) 425-1997
> Fax: (850) 561-0836
> E-mail: rick@rej-law.com
> *Counsel for Plaintiff-Appellant*

_____
Attorney

4864-2663-1864, v. 1